THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
HARVINDER S. ANAND (Cal. State Bar No.: 243913)
Assistant United States Attorney
      1400 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-2624
      Facsimile: (213) 894-0142
      E-mail: harvinder.anand@usdoj.gov

Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>                    v.<br><br>STANLEY ALEXANDER HUDSON,<br>    aka "Stanley Alexander,"<br>    aka "Brandon M.<br>      Courtney,"<br>    aka "Isiah S. Ross,"<br>    aka "Kenneth Z.<br>      Anderson," and<br>THOMAS EDWIN COCHEE,<br>    aka "Kenneth Anderson,"<br>    aka "Kevin Ross,"<br>    aka "Jonathan Houston,"<br>    aka "Nicholas Letterman,"<br>    aka "Rodney Hudson,"<br><br>                    Defendants. | CR No. 08-715(A)-PSG<br><br><u>PLEA AGREEMENT FOR DEFENDANT</u><br><u>STANLEY ALEXANDER HUDSON</u> |

      1.   This constitutes the plea agreement between defendant

Stanley Alexander Hudson, also known as ("aka") "Stanley

Alexander," aka "Brandon M. Courtney," aka "Isiah S. Ross," and

aka "Kenneth Z. Anderson" ("defendant"), and the United States

Attorney's Office for the Central District of California ("the



1  USAO") in the above-captioned case.  This agreement is limited to

2  the USAO and cannot bind any other federal, state or local

3  prosecuting, administrative or regulatory authorities.

PLEAS

4

5      2.  Defendant agrees to plead guilty to counts eight, ten

6  and fourteen of the First Superseding Indictment in <u>United States</u>

7  <u>v. Stanley Alexander Hudson</u>, et al., CR No. 08-715(A)-PSG.

NATURE OF THE OFFENSES

8

9      3.  In order for defendant to be guilty of count eight of

10  the First Superseding Indictment, which charges a violation of

11  Title 18, United States Code, Section 1344, the following must be

12  true:

13          (a)  Defendant knowingly carried out a scheme or plan

14  to obtain money or property from J.P. Morgan Chase ("J.P.

15  Morgan") by making false statements or promises;

16          (b)  Defendant knew that the statements or promises

17  were false;

18          (c)  The statements or promises were material, that is,

19  they would reasonably influence a bank to part with money or

20  property;

21          (d)  Defendant acted with the intent to defraud; and

22          (e)  J.P. Morgan was federally insured.

23      Each member of a scheme to defraud is responsible for other

24  co-schemers' actions during the course of and in furtherance of

25  the scheme.  If defendant was a member of a scheme to defraud and

26  had the intent to defraud J.P. Morgan, defendant is responsible

27  for what other co-schemers said or did to carry out the scheme,

28  even if defendant did not know what they said or did.  For

-2-

1  defendant to be guilty of an offense committed by a co-schemer as
2  part and in furtherance of the scheme, the offense must be one
3  that could reasonably be foreseen as a necessary and natural
4  consequence of the scheme to defraud.

5      Defendant admits that defendant is, in fact, guilty of this
6  offense, as described in count eight of the First Superseding
7  Indictment.

8          4.    In order for defendant to be guilty of count ten
9  of the First Superseding Indictment, which charges a violation of
10 Title 18, United States Code, Section 1028A(a)(1), the following
11 must be true:

12          (a)   Defendant knowingly transferred, possessed, or
13 used a means of identification of another person;

14          (b)   The means of identification belonged to another
15 person;

16          (c)   Defendant knew that the means of identification he
17 transferred, possessed, or used actually belonged to another
18 person;

19          (d)   Defendant did so without lawful authority; and

20          (e)   Defendant did so during and in relation to
21 committing a felony violation of 18 U.S.C. § 1344, Bank Fraud, as
22 charged in count eight of the First Superseding Indictment.

23     Defendant admits that defendant is, in fact, guilty of this
24 offense, as described in count ten of the First Superseding
25 Indictment.

26    5. In order for defendant to be guilty of count fourteen of
27 the First Superseding Indictment, which charges a violation of
28 Title 18, United States Code, Section 1029(a)(2), the following

-3-

must be true:

        (a)  Defendant knowingly used and trafficked in an unauthorized access device, that is, credit card account number XXXX-XXXX-XXXX-8455, at any time during a one-year period beginning in or about September 2007, and ending in or about March 2008;

        (b)  By using and trafficking in the unauthorized access device during that period, defendant obtained things of value, their value together totaling $1,000 or more during that period;

        (c)  Defendant acted with the intent to defraud; and

        (d)  Defendant's conduct in some way affected commerce between one state and other states.

Defendant admits that defendant is, in fact, guilty of this offense, as described in count fourteen of the First Superseding Indictment.

## PENALTIES AND RESTITUTION

6.  The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1344, is:  30 years imprisonment; a five-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.  The statutory mandatory minimum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1028A(a)(1), is:  2 years imprisonment, which must run consecutive to any other term of imprisonment imposed on a person under any other provision of law; and a mandatory special

-4-

1  assessment of $100.

2      8.   The statutory maximum sentence that the Court can

3  impose for a violation of Title 18, United States Code, Section

4  1028A(a)(1), is:  2 years imprisonment, which must run

5  consecutive to any other term of imprisonment imposed on a person

6  under any other provision of law; a 1-year period of supervised

7  release; a fine of $250,000 or twice the gross gain or gross loss

8  resulting from the offense, whichever is greatest; and a

9  mandatory special assessment of $100.

10      9.   The statutory maximum sentence that the Court can impose

11  for a violation of Title 18, United States Code, Section

12  1029(a)(2), is:  10 years imprisonment; a three-year period of

13  supervised release; a fine of $250,000 or twice the gross gain or

14  gross loss resulting from the offense, whichever is greatest; and

15  a mandatory special assessment of $100.

16      10.   Therefore, the total maximum sentence for all offenses

17  to which defendant is pleading guilty is: 42 years imprisonment;

18  a 5-year period of supervised release; a fine of $1,250,000 or

19  twice the gross gain or gross loss resulting from the offenses,

20  whichever is greatest; and a mandatory special assessment of

21  $300.

22      11.   Defendant understands that defendant will be required

23  to pay full restitution to the victims of the offenses.

24  Defendant agrees that, in return for the USAO's compliance with

25  its obligations under this agreement, the amount of restitution

26  is not restricted to the amounts alleged in the counts to which

27  defendant is pleading guilty and may include losses arising from

28  counts dismissed and charges not prosecuted pursuant to this

agreement as well as all relevant conduct in connection with those counts and charges.  The parties currently believe that the applicable amount of restitution is approximately $755,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. Defendant further agrees that defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

12.   Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.   Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

14.   Defendant further understands that the convictions in this case may subject defendant to various collateral consequences, including but not limited to, deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

-6-

1                          FACTUAL BASIS

2        15.  Defendant and the USAO agree and stipulate to the

3   statement of facts provided below.  This statement of facts

4   includes facts sufficient to support pleas of guilty to the

5   charges described in this agreement and to establish the

6   sentencing guideline factors set forth in paragraph 19 below.  It

7   is not meant to be a complete recitation of all facts relevant to

8   the underlying criminal conduct or all facts known to defendant

9   that relate to that conduct.

10           (a)  For more than five years before defendant was

11  arrested in this case on October 29, 2008, defendant, along with

12  defendant Thomas Edwin Cochee, also known as ("aka") "Kenneth

13  Anderson," aka "Kevin Ross," aka "Jonathan Houston," aka

14  "Nicholas Letterman," and aka "Rodney Hudson" ("defendant

15  Cochee"), and together with other participants of their scheme

16  (defendant Cochee and the other participants of the scheme are

17  hereinafter collectively called the "co-schemers"), knowingly

18  participated in, carried out and executed a scheme to defraud

19  numerous banks.  Defendant and his co-schemers executed the

20  scheme to defraud by opening over 50 fraudulent credit card

21  accounts and charging over $755,000 to those accounts.  Defendant

22  opened the fraudulent credit card accounts himself.  Defendant

23  and his co-schemers promised the victim banks, including Bank of

24  America, N.A. ("Bank of America"), Capital One Bank ("Capital

25  One"), Citibank, and J.P. Morgan (hereinafter, each of the

26  individual foregoing banks includes any predecessor bank acquired

27  by it that issued credit cards relevant to this First Superseding

28  Indictment; collectively, the "victim banks"), that they would

                                -7-

1   repay the charges they made to the credit card accounts, even
2   though defendant never intended to repay, and has not repaid, the
3   victim banks.   The promises made by defendant and his co-schemers
4   were material, that is, the banks would not have extended credit
5   to defendant and his co-schemers if the banks knew that neither
6   defendant nor any other co-schemer would repay the charges made
7   to the fraudulent credit cards.

8          (b)   To execute the scheme, defendant opened the
9   fraudulent credit card accounts by using social security numbers
10  belonging to real people, the names of individuals to whom the
11  social security numbers had not been issued, and dates of birth
12  that were not the real dates of birth of the individuals to whom
13  the social security numbers had been issued.   Defendant used over
14  30 social security numbers belonging to real people during the
15  course of the scheme.   Many of the social security numbers that
16  defendant used to open the fraudulent credit cards belonged to
17  minors.

18         (c)   Defendant gave a real social security number not
19  assigned to himself to at least one other co-schemer to open
20  fraudulent credit card accounts.   Defendant knew that the other
21  co-schemer would open credit card accounts with that social
22  security number.   Defendant told the other co-schemer that the
23  social security number was "good," which defendant knew to mean
24  that the social security number belonged to a real person and
25  would permit his co-schemer to open fraudulent credit card
26  accounts.

27         (d)   To execute the scheme to defraud, defendant and
28  his co-schemers opened and used mailboxes at numerous commercial

-8-

1   mailings receiving agencies ("CMRAs") in the Los Angeles area.
2   Defendant and his co-schemers opened the mailboxes by using false
3   names and fraudulent identification cards.  Defendant himself
4   opened at least one of these mailboxes.  Defendant also paid his
5   co-schemers to open numerous mailboxes by using fraudulent
6   identification cards.  Defendant and his co-schemers used
7   fraudulent identification cards to avoid being apprehended and
8   prosecuted for their participation in the ongoing illegal scheme
9   to defraud banks.

10          (e)   When defendant submitted applications to the
11  victim banks to open fraudulent credit card accounts, he used the
12  addresses of the CMRAs described above in subparagraph 15(d).
13  Defendant had the victim banks send credit card statements to the
14  CMRAs.  Defendant used the addresses of CMRAs to avoid being
15  apprehended and prosecuted for his participation in the ongoing
16  illegal scheme to defraud banks.  Defendant also used the address
17  of at least one CMRA to open fraudulent credit card accounts in
18  his own name.

19          (f) Acting with the intent to defraud, defendant added
20  his co-schemers as authorized users on several of the fraudulent
21  credit card accounts that he opened and controlled.  Defendant
22  did this as part of the scheme to defraud banks so that his co-
23  schemers would be able to make transfers from and charges to the
24  fraudulent credit cards that he opened and controlled.

25          (g)   For more than the five years before defendant was
26  arrested in this case, defendant and the co-schemers obtained
27  cash advances and made balance transfers and purchases with the
28  fraudulent credit cards.  Defendant made purchases for himself

1  with the fraudulent credit cards and other co-schemers used the

2  fraudulent credit cards to make purchases for themselves and on

3  defendant's behalf.  Defendant obtained cash advances for himself

4  with the fraudulent credit cards and co-schemers used fraudulent

5  credit cards to obtain cash advances for themselves and on

6  defendant's behalf.

7          (h)  For more than the five years before defendant was

8  arrested in this case, defendant and his co-schemers took the

9  following actions to execute the scheme to defraud:  (1) drive to

10  CMRAs throughout the Los Angeles area, pick up mail from victim

11  banks, and deliver the mail to defendant; (2) make balance

12  transfers with the fraudulent credit cards; (3) purchase gift

13  cards from stores with the fraudulent credit cards; (4) deposit

14  checks into bank accounts set up by defendant; and (5) go to

15  automated teller machines to withdraw money.  For participating

16  in and working with defendant to execute the fraudulent scheme,

17  co-schemers would receive cash and gift cards.  Defendant's co-

18  schemers purchased gift cards with the fraudulent credit cards

19  and kept some of the gift cards as compensation.  Defendant's co-

20  schemers also made and kept purchases with the fraudulent credit

21  cards.  Defendant also used the fraudulent credit cards to obtain

22  cash advances and make purchases for himself.

23          (i)  Defendant acted with the intent to defraud the

24  victim banks, including Bank of America, Capital One, Citibank

25  and JP Morgan.  Defendant admits that the scheme to defraud had

26  been ongoing for at least the five years prior to his arrest,

27  that the scheme involved himself and defendant Cochee, and

28  others.  Defendant knew that banks were losing money as a direct

-10-

1   result of his actions in carrying out the scheme to defraud.

2          (j)   Defendant made some payments to the victim banks,
3   but only to make it appear to the banks that the fraudulent
4   accounts were actually legitimate accounts.   Defendant made those
5   payments so that the banks would continue to extend him credit,
6   knowing that he would not repay the victim banks whatever the
7   balances were when the banks eventually discovered that the
8   accounts were in fact fraudulent.   Defendant agrees that the
9   victim banks have lost at least $755,000 as a direct result and
10  consequence of his scheme to defraud.

11         (k)   Defendant used the money that he obtained from the
12  fraudulent accounts for his personal financial gain.   Among other
13  things, defendant purchased expensive watches, electronic
14  equipment, bearer bonds, and real estate with the money that he
15  derived from the scheme to defraud.

16         (l)   On or about August 17, 2007, defendant submitted
17  an application to J.P. Morgan to open a fraudulent credit card
18  account.   Defendant submitted the application in the name of
19  "Brandon M. Courtney" and used Social Security Number XXX-XX-
20  0012.   Relying on defendant's fraudulent application, J.P. Morgan
21  opened credit card account number XXXX-XXXX-XXXX-8455 in the name
22  of "Brandon M. Courtney."   J.P. Morgan was federally insured at
23  all times relevant to this case.

24         (m)   From September 2007 through March 2008, defendant
25  used fraudulent credit card account number XXXX-XXXX-XXXX-8455 to
26  obtain cash advances and make balance transfers and purchases.
27  Defendant knowingly and intentionally took actions, and
28  defendant's co-schemers took actions in concert with defendant,

-11-

1   as described above, that were necessary to commit this crime.  As
2   a result, defendant and his co-schemers obtained things of value
3   totaling approximately $55,000, which neither defendant nor any
4   of his co-schemers has repaid.  Accordingly, J.P. Morgan has lost
5   approximately $55,000 on fraudulent credit card account number
6   XXXX-XXXX-XXXX-8455.   Defendant's conduct affected interstate
7   commerce between California an other states because, among other
8   things, the United States mails were used by J.P. Morgan to send
9   credit card account statements to a CMRA in the Los Angeles area.
10          (n)   Defendant used the name "Brandon M. Courtney" and
11   the social security number XXX-XX-0012 to open fraudulent credit
12   card account number XXXX-XXXX-XXXX-8455 with J.P. Morgan.   When
13   defendant submitted the application to J.P. Morgan, he acted
14   willfully, knowing that (1) his name was not "Brandon M.
15   Courtney"; (2) his social security number was not XXX-XX-0012;
16   and (3) social security number XXX-XX-0012 belonged a real
17   person.
18          (o)   The United States Social Security Administration
19   has confirmed that a real person has been assigned social
20   security number XXX-XX-0012.
21          (p)   Defendant did not at any time have lawful
22   authority to transfer, possess, or use social security number
23   XXX-XX-0012.
24          (q)   Defendant used social security number XXX-XX-0012
25   to, among other things, obtain credit from J.P. Morgan by using
26   another person's true social security number, disguise his true
27   identity, conceal his illegal activities, including during and in
28   relation to committing Bank Fraud, as charged in count eight of

-12-

1  the First Superseding Indictment, and to avoid being apprehended

2  and prosecuted.

3          (r)   Defendant agrees that the following institutions

4  were victims of his scheme to defraud because they lost money as

5  a direct consequence of the scheme:  (1) First USA, (2) J.P.

6  Morgan, (3) Bank of America, (4) Capital One, (5) Discover, (6)

7  American Express, (7) Washington Mutual, (8) MBNA America Bank

8  National Association, (9) Banco Popular, and (10) Wells Fargo.

9                    WAIVER OF CONSTITUTIONAL RIGHTS

10     16.   By pleading guilty, defendant gives up the following

11  rights:

12          (a)   The right to persist in a plea of not guilty.

13          (b)   The right to a speedy and public trial by jury.

14          (c)   The right to the assistance of legal counsel at

15  trial, including the right to have the Court appoint counsel for

16  defendant for the purpose of representation at trial.  (In this

17  regard, defendant understands that, despite his pleas of guilty,

18  he retains the right to be represented by counsel - and, if

19  necessary, to have the court appoint counsel if defendant cannot

20  afford counsel - at every other stage of the proceedings.)

21          (d)   The right to be presumed innocent and to have the

22  burden of proof placed on the government to prove defendant

23  guilty beyond a reasonable doubt.

24          (e)   The right to confront and cross-examine witnesses

25  against defendant.

26          (f)   The right, if defendant wished, to testify on

27  defendant's own behalf and present evidence in opposition to the

28  charges, including the right to call witnesses and to subpoena

                              -13-

1  those witnesses to testify.

2          (g)  The right not to be compelled to testify, and, if

3  defendant chose not to testify or present evidence, to have that

4  choice not be used against defendant.

5      By pleading guilty, defendant also gives up any and all

6  rights to pursue any affirmative defenses, Fourth Amendment or

7  Fifth Amendment claims, and other pretrial motions that have been

8  filed or could be filed.

9                       WAIVER OF DNA TESTING

10     17.  Defendant has been advised that the government has in

11  its possession the following items of physical evidence that

12  could be subjected to DNA testing: (a) physical evidence seized

13  from defendant Cochee on June 10, 2008, when he was arrested in

14  this case; (b) physical evidence seized from defendant and his

15  home on October 29, 2008, when he was arrested in this case; and

16  (c) all other physical evidence acquired during the course of

17  investigating this case.  Defendant understands that the

18  government does not intend to conduct DNA testing of any of these

19  items or any other item.  Defendant understands that, before

20  entering guilty pleas pursuant to this agreement, defendant could

21  request DNA testing of evidence in this case.  Defendant further

22  understands that, with respect to the offenses to which defendant

23  is pleading guilty pursuant to this agreement, defendant would

24  have the right to request DNA testing of evidence after

25  conviction under the conditions specified in 18 U.S.C.

26  § 3600.  Knowing and understanding defendant's right to request

27  DNA testing, defendant knowingly and voluntarily gives up that

28  right with respect to both the specific items listed above and

                              -14-

1  any other item of evidence there may be in this case that might
2  be amenable to DNA testing.  Defendant understands and
3  acknowledges that by giving up this right, defendant is giving up
4  any ability to request DNA testing of evidence in this case in
5  the current proceeding, in any proceeding after conviction under
6  18 U.S.C. § 3600, and in any other proceeding of any type.
7  Defendant further understands and acknowledges that by giving up
8  this right, defendant will never have another opportunity to have
9  the evidence in this case, whether or not listed above, submitted
10 for DNA testing, or to employ the results of DNA testing to
11 support a claim that defendant is innocent of the offenses to
12 which defendant is pleading guilty.

13                          SENTENCING FACTORS

14     18.  Defendant understands that the Court is required to
15 consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7),
16 including the kinds of sentence and sentencing range established
17 under the United States Sentencing Guidelines ("U.S.S.G." or
18 "Sentencing Guidelines"), in determining defendant's sentence.
19 Defendant further understands that the Sentencing Guidelines are
20 advisory only, and that after considering the Sentencing
21 Guidelines and the other § 3553(a) factors, the Court may be free
22 to exercise its discretion to impose any reasonable sentence up
23 to the maximum set by statute for the crimes of conviction.
24 ///
25 ///
26 ///
27 ///
28 ///

1    19. Defendant and the USAO agree and stipulate to the

2  following applicable Sentencing Guideline factors:

3  <u>Counts Eight and Fourteen</u>:

4    Base Offense Level  :     7   [U.S.S.G. § 2B1.1(a)(1)]

5    Loss  more than
   $400,000, less than
6  $1,000,00:              +14  [U.S.S.G. § 2B1.1(b)(1)(H)]

7
     10 or more victims:    +2  [U.S.S.G. § 2B1.1(b)(2)]
8

9  <u>Count Ten</u>:

10    Two years imprisonment      [U.S.S.G. §§ 2B1.6 and
    consecutive to the          5G1.2(a)]
11    sentence imposed on
    Counts Eight and
12    Fourteen.

13 Defendant and the USAO reserve the right to argue that additional

14 specific offense characteristics, adjustments and departures

15 under the Sentencing Guidelines are appropriate.  Specifically,

16 the USAO reserves the right to argue that an increase in the

17 offense level in addition to the 14 levels agreed to by the

18 parties for the loss amount is appropriate under U.S.S.G. §

19 2B1.1(b)(1).  The government currently believes that the

20 applicable amount of loss for which defendant is responsible is

21 approximately $755,000.  Defendant recognizes and agrees that

22 this amount could change based on facts that come to the

23 attention of the parties prior to sentencing, which may subject

24 defendant to a higher loss amount and corresponding sentencing

25 factor.  The USAO also reserves the right to argue that an

26 increase in defendant's offense level under U.S.S.G. § 3B1.1(c),

27 based on defendant's aggravating role, is appropriate.  In the

28 event that defendant's offense level is so altered, the parties

-16-

1  are not bound by the base offense level stipulated to above.

2      20.  There is no agreement as to defendant's criminal

3  history or criminal history category.

4      21.  Defendant and the USAO, pursuant to the factors set

5  forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and

6  (a)(7), further reserve the right to argue for a sentence outside

7  the sentencing range established by the Sentencing Guidelines.

8      22.  The stipulations in this agreement do not bind either

9  the United States Probation Office or the Court.  Both defendant

10  and the USAO are free to:  (a) supplement the facts by supplying

11  relevant information to the United States Probation Office and

12  the Court, (b) correct any and all factual misstatements relating

13  to the calculation of the sentence, and (c) argue on appeal and

14  collateral review that the Court's Sentencing Guidelines

15  calculations are not error, although each party agrees to

16  maintain its view that the calculations in paragraph 19 are

17  consistent with the facts of this case.

18                    <u>DEFENDANT'S OBLIGATIONS</u>

19      23.  Defendant agrees that he will:

20          (a)  Plead guilty as set forth in this agreement.

21          (b)  Not knowingly and willfully fail to abide by all

22  sentencing stipulations contained in this agreement.

23          (c)  Not knowingly and willfully fail to: (i) appear as

24  ordered for all court appearances, (ii) surrender as ordered for

25  service of sentence, (iii) obey all conditions of any bond, and

26  (iv) obey any other ongoing court order in this matter.

27          (d)  Not commit any crime; however, offenses which

28  would be excluded for sentencing purposes under U.S.S.G. §

1    4A1.2(c) are not within the scope of this agreement.

2         (e)   Not knowingly and willfully fail to be truthful at

3    all times with Pretrial Services, the U.S. Probation Office, and

4    the Court.

5         (f)   Pay the applicable special assessments at or

6    before the time of sentencing unless defendant lacks the ability

7    to pay.

8    24.   Defendant further agrees:

9         (a)   To forfeit all right, title, and interest in and

10   to all such items, specifically including, but not limited to,

11   all right, title and interest in and to:

12        (1)   The real property located at 5714 Rimpau

13   Boulevard, Los Angeles, CA 90043;

14        (2)   $69,931, seized from defendant's home on

15   October 29, 2008, and all other United States currency, wherever

16   located;

17        (3)   Thirty-eight Series EE Savings Bonds, seized

18   from defendant's home on October 29, 2008; and

19        (4)   The following six watches and one watch

20   winder, seized from defendant's home on October 29, 2008:   one

21   Omega Seamaster "Aqua Terra" watch; one Omega "Seamaster

22   Professional" watch; one Omega Seamaster "Planet Ocean" watch;

23   one Breitling "Super Avenger" watch; one alleged counterfeit

24   Breitling watch; one Breitling "Super Avenger" watch; and one

25   Wolf design watch winder.

26        (b)   To the Court's entry of an order of forfeiture at

27   or before sentencing with respect to these assets and to the

28   forfeiture of the assets.

-18-

(c)  To take whatever steps are necessary to pass to the United States clear title to the assets described above, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

(d)  Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against these properties.  With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant  waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment.  Defendant acknowledges that forfeiture of the assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise defendant of this, pursuant to Rule 11(b)(1)(J), at the time defendant's guilty plea is accepted.

(e)  Not to assist any other individual in any effort falsely to contest the forfeiture of the assets described above.

(f)  Not to claim that reasonable cause to seize the assets was lacking.

(g)  To prevent the disbursement of any and all assets described above if such disbursements are within defendant's direct or indirect control.

(h)  To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the United States Attorney's Office.

(i)  That forfeiture of assets described above shall

-19-

1  shall not be counted toward satisfaction of any special

2  assessment, fine, restitution, or any other penalty the Court may

3  impose.  However, if the Asset Forfeiture and Money Laundering

4  Section ("AFMLS") of the Department of Justice grants any

5  petition for remission submitted by a victim of defendant's

6  illegal activities as set forth in the First Superseding

7  Indictment, then the USAO will not object to defendant receiving

8  credit towards payment of restitution in the amount of the lesser

9  of (1) the amount actually paid to the victim pursuant to the

10  grant of the petition for remission by AFMLS; or (2) the amount

11  of the victim's loss reflected in the court's restitution order.

12                    THE USAO'S OBLIGATIONS

13      25.   If defendant complies fully with all defendant's

14  obligations under this agreement, the USAO agrees:

15          (a)   To abide by all sentencing stipulations contained

16  in this agreement.

17          (b)   At the time of sentencing, provided that defendant

18  demonstrates an acceptance of responsibility for the offenses up

19  to and including the time of sentencing, to move to dismiss the

20  remaining counts of the First Superseding Indictment as against

21  defendant.  Defendant agrees, however, that at the time of

22  sentencing the Court may consider the dismissed counts in

23  determining the applicable Sentencing Guidelines range, where the

24  sentence should fall within that range, the propriety and extent

25  of any departure from that range, and the determination of the

26  sentence to be imposed after consideration of the sentencing

27  guidelines and all other relevant factors.

28          (c)   At the time of sentencing, provided that defendant

-20-

1  demonstrates an acceptance of responsibility for the offenses up

2  to and including the time of sentencing, to recommend a two-level

3  reduction in the applicable sentencing guideline offense level,

4  pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary,

5  move for an additional one-level reduction if available under

6  that section.

7                          BREACH OF AGREEMENT

8      26.  If defendant, at any time after the execution of this

9  agreement, knowingly violates or fails to perform any of

10  defendant's agreements or obligations under this agreement ("a

11  breach"), the USAO may declare this agreement breached.  If the

12  USAO declares this agreement breached at any time following its

13  execution, and the Court finds such a breach to have occurred,

14  then: (a) if defendant has previously entered guilty pleas,

15  defendant will not be able to withdraw the guilty pleas, and (b)

16  the USAO will be relieved of all of its obligations under this

17  agreement.

18     27.  Following the Court's finding of a knowing and willful

19  breach of this agreement by defendant, should the USAO elect to

20  pursue any charge that was either dismissed or not filed as a

21  result of this agreement, then:

22          (a)  Defendant agrees that any applicable statute of

23  limitations is tolled between the date of defendant's signing of

24  this agreement and the commencement of any such prosecution or

25  action.

26          (b)  Defendant gives up all defenses based on the

27  statute of limitations, any claim of pre-indictment delay, or any

28  speedy trial claim with respect to any such prosecution, except

                                  -21-

1  to the extent that such defenses existed as of the date of
2  defendant's signing this agreement.

3          (c)   Defendant agrees that:   (i) any statements made by
4  defendant, under oath, at the guilty plea hearing (if such a
5  hearing occurred prior to the breach); (ii) the stipulated
6  factual basis statement in this agreement; and (iii) any evidence
7  derived from such statements, are admissible against defendant in
8  any such prosecution of defendant, and defendant shall assert no
9  claim under the United States Constitution, any statute, Rule 410
10  of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules
11  of Criminal Procedure, or any other federal rule, that the
12  statements or any evidence derived from any statements should be
13  suppressed or are inadmissible.

14  <u>LIMITED MUTUAL WAIVER OF APPEAL</u>

15      28.   Defendant gives up the right to appeal any sentence
16  imposed by the Court, including any order of restitution, and the
17  manner in which the sentence is determined, provided that (a) the
18  sentence is within the statutory maximum specified above and is
19  constitutional, and (b) the Court imposes a sentence within or
20  below the range corresponding to a total offense level of 22, and
21  the applicable criminal history category as determined by the
22  Court.   Notwithstanding the foregoing, defendant retains any
23  ability defendant has to appeal the Court's determination of
24  defendant's criminal history category and the conditions of
25  supervised release imposed by the Court, with the exception of
26  the following:

27          (a)   Conditions set forth in General Orders 318, 01-05,
28  and/or 05-02 of this Court;

-22-

1          (b)   The drug testing conditions mandated by 18 U.S.C.
2    §§ 3563(a)(5) and 3583(d);
3          (c)   The alcohol and drug use conditions authorized by
4    18 U.S.C. § 3563(b)(7);
5          (d)   Defendant shall not possess or use a device with
6    access to any online service at any location without the prior
7    approval of the Probation Officer.  This includes access through
8    any Internet service provider, bulletin board system, or any
9    public or private computer network system.  Further, defendant
10   shall not have another individual access the Internet on
11   defendant's behalf to obtain files or information that defendant
12   is restricted from accessing personally, or accept restricted
13   files or information from another person;
14         (e)   Defendant shall use only those computers,
15   computer-related devices, screen/user names, passwords, e-mail
16   accounts, and Internet Service Providers (ISPs) approved by the
17   Probation Officer.  Computer and computer-related devices
18   include, but are not limited to, personal computers, personal
19   data assistants (PDAs), Internet appliances, electronic games,
20   and cellular telephones, as well as peripheral equipment, that
21   can access, or can be modified to access, the Internet,
22   electronic bulletin boards, other computers, or similar media.
23   Defendant shall use any approved computers only within the scope
24   of his employment.  Defendant shall not access a computer for any
25   other purpose.  Defendant shall immediately report any changes in
26   defendant's employment affecting defendant's access and/or use of
27   computers or the Internet, including e-mail; and
28         (f)   All computers, computer-related devices, computer

-23-

1  storage media, and peripheral equipment used by defendant shall
2  be subject to search and seizure, and subject to the installation
3  of search and/or monitoring software and/or hardware, including
4  unannounced seizure for the purpose of search.  Defendant shall
5  not add, remove, upgrade, update, reinstall, repair, or otherwise
6  modify the hardware or software on any computers, computer-
7  related devices, or peripheral equipment without the prior
8  approval of the Probation Officer, nor shall defendant hide or
9  encrypt files or data.  Further, defendant shall, as requested by
10 the Probation Officer, provide all billing records, including
11 telephone, cable, Internet, satellite, and similar records.

12      29.  The USAO gives up its right to appeal the sentence,
13 provided that (a) the sentence is within the statutory minimum
14 and maximum specified above and is constitutional, and (b) the
15 Court imposes a sentence within or above the range corresponding
16 to a total offense level of 22, and the applicable criminal
17 history category as determined by the Court.

18               RESULT OF VACATUR, REVERSAL OR SET-ASIDE

19      30.  Defendant agrees that if any count of conviction is
20 vacated, reversed, or set aside, the USAO may:  (a) ask the Court
21 to resentence defendant on any remaining counts of conviction,
22 with both the USAO and defendant being released from any
23 stipulations regarding sentencing contained in this agreement,
24 (b) ask the Court to void the entire plea agreement and vacate
25 defendant's guilty plea on any remaining counts of conviction,
26 with both the USAO and defendant being released from all of their
27 obligations under this agreement, or (c) leave defendant's
28 remaining convictions, sentence, and plea agreement intact.

1  Defendant agrees that the choice among these three options rests
2  in the exclusive discretion of the USAO.

3                        COURT NOT A PARTY

4      31.   The Court is not a party to this agreement and need not
5  accept any of the USAO's sentencing recommendations or the
6  parties' stipulations.   Even if the Court ignores any sentencing
7  recommendation, finds facts or reaches conclusions different from
8  any stipulation, and/or imposes any sentence up to the maximum
9  established by statute, defendant cannot, for that reason,
10 withdraw defendant's guilty pleas, and defendant will remain
11 bound to fulfill all defendant's obligations under this
12 agreement.   No one – not the prosecutor, defendant's attorney, or
13 the Court – can make a binding prediction or promise regarding
14 the sentence defendant will receive, except that it will be
15 within the statutory maximum.

16                     NO ADDITIONAL AGREEMENTS

17     32.   Except as set forth herein, there are no promises,
18 understandings or agreements between the USAO and defendant or
19 defendant's counsel.   Nor may any additional agreement,
20 understanding or condition be entered into unless in a writing
21 signed by all parties or on the record in court.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

                              -25-

1      PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          33.   The parties agree and stipulate that this Agreement

3   will be considered part of the record of defendant's guilty plea

4   hearing as if the entire Agreement had been read into the record

5   of the proceeding.

6          This agreement is effective upon signature by defendant and

7   an Assistant United States Attorney.

8   AGREED AND ACCEPTED

9   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

10
    THOMAS P. O'BRIEN
11  United States Attorney

12  _____            April 10, 2009
                                                _____
13  HARVINDER S. ANAND                          Date
    Assistant United States Attorney

14

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

                          -26-

1    I have read this agreement and carefully discussed every
2   part of it with my attorney.  I understand the terms of this
3   agreement, and I voluntarily agree to those terms.  My attorney
4   has advised me of my rights, of possible defenses, of the
5   Sentencing Guideline provisions, and of the consequences of
6   entering into this agreement.  No promises or inducements have
7   been made to me other than those contained in this agreement.  No
8   one has threatened or forced me in any way to enter into this
9   agreement.  Finally, I am satisfied with the representation of my
10  attorney in this matter.

11

12  _____          _____
    STANLEY ALEXANDER HUDSON                        Date
13  Defendant

14

15    I am Stanley Alexander Hudson's attorney.  I have carefully
16  discussed every part of this agreement with my client.  Further,
17  I have fully advised my client of his rights, of possible
18  defenses, of the Sentencing Guidelines' provisions, and of the
19  consequences of entering into this agreement.  To my knowledge,
20  my client's decision to enter into this agreement is an informed
21  and voluntary one.

22

23  _____          _____
    DAVID R. REED                                   Date
24  Counsel for Defendant
    STANLEY ALEXANDER HUDSON
25

26

27

28

                              -27-